Lowell THOMAS, Jr., Lieutenant Governor of Alaska; Patty Ann Polley, Director, Division of Elections; Mary Jo Hobbs, Supervisor of Elections, Juneau; Jo Ann Crane, Supervisor of Elections, Nome; Octavia Hansen, Supervisor of Elections, Anchorage; and Ann Spielberg, Supervisor of Elections, Fairbanks, Appellants,

v.

Chancy CROFT, Appellee.

No. 4719.

Supreme Court of Alaska.

July 18, 1980.

Carolyn E. Jones and Michael Arruda, Asst. Attys. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellants.

Chancy Croft, Croft, Thurlow & Duggan, Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER and BURKE, JJ., and DIMOND, Senior Justice.

## OPINION

DIMOND, Senior Justice.

This litigation stems from the contested gubernatorial primary election of August, 1978. Plaintiffs were the primary election losers, Walter Hickel and Edward Merdes. Defendants included (1) state election officials (Lieutenant Governor Thomas and others, hereinafter referred to as the State), and (2) the primary winners, Jay Hammond and Chancy Croft. The State appeals from an order by the superior court assessing costs and attorney's fees against it and in favor of Croft.

The plaintiffs, Hickel and Merdes, had contested the election pursuant to AS 15.-

20.540,[1] alleging that there had been malconduct by election officials sufficient to change the result of the election. The superior court initially held that there had been such malconduct. On appeal, we identified several irregularities and some malconduct, but noted that the lower court had "made no finding as to how the votes allegedly affected by malconduct could have changed the result of the election." We reversed the lower court's holding that the statutory requirement (that malconduct be "sufficient to change the result") was fulfilled by impeachment of the integrity of the election process by malconduct. *Hammond v. Hickel*, 588 P.2d 256, 259–60 (Alaska 1978). After the votes were recomputed and certified pursuant to the terms of our memorandum and order, the superior court entered judgment that the election had been validly conducted and that Hammond and Croft had been the primary winners in their respective parties.

Croft was the only party to the action to make a timely motion for attorney's fees. The superior court held that the public interest exception of *Gilbert v. State*, 526 P.2d 1131 (Alaska 1974),[2] precluded an assessment of attorney's fees under Alaska Civil Rule 82 against the losing plaintiffs, Hickel and Merdes. However, Croft's motion that attorney's fees be assessed against the State was granted. The superior court reasoned that "[t]here would have been no lawsuit if the State had not engaged in questionable and, indeed, illegal practices in the conduct of the election." It held that attorney's fees may be awarded against a co-prevailing party (here, the State) where the lawsuit arises from improper conduct which has necessitated the expenses of defense by another, innocent co-prevailing party (such as Croft).

Accordingly, the superior court ordered that Croft recover attorney's fees of $15,000 from the State of Alaska. Later, the superior court affirmed an order taxing costs of $4,208.85 against the State and in favor of Croft.

We affirm these orders of the superior court but limit our holding to the facts of this case.

The State advances three arguments in favor of reversing the superior court. First, it argues that the superior court's decision was based on an improper motive because its purpose was to penalize the state. An award of costs and attorney's fees is based on an improper motive if it is "designed for a purpose other than justly deserved compensation." *See Fairbanks Builders, Inc. v. Sandstrom Plumbing & Heating, Inc.*, 555 P.2d 964, 967 (Alaska 1976), *cited in Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979). Clearly the superior court's purpose was to compensate Croft for actual costs and for the actual productive work of his attorney.[3] Therefore, we reject this argument.

Second, the State contends that the lower court's application of the public interest exception was improper and that Rule 82 fees should have been assessed against the losing plaintiffs rather than against the State.[4]

---

1. AS 15.20.540 provides:
   A defeated candidate or 10 qualified voters may contest the nomination or election of any person or the approval or rejection of any question or proposition upon one or more of the following grounds: (1) malconduct, fraud, or corruption on the part of an election official sufficient to change the result of the election; (2) when the person certified as elected or nominated is not qualified as required by law; (3) any corrupt practice as defined by law sufficient to change the results of the election.

2. *Gilbert* held that Civil Rule 82 fees could not be assessed against a losing party who had raised a genuine question of public interest in good faith. 526 P.2d at 1136.

3. The superior court stated that it was applying "the general rationale of *Malvo v. J. C. Penney Co.*, 512 P.2d 575, 587 (Alaska 1973), that the purpose of Civil Rule 82 is to partially compensate a prevailing party." The court refused to award full attorney's fees.

4. The appropriateness of such an argument is at least questionable since Hickel and Merdes are not parties to this appeal. Appellants' logic may be that the assessment against the state was an abuse of discretion because it was based on a faulty premise, the allegedly faulty premise being that an assessment of attorney's

A decision under Rule 82 "is within the sound discretion of the trial court and is reviewable on appeal only where 'the trial court's determination was manifestly unreasonable, arbitrary or designed for a purpose other than justly deserved compensation.'" *White v. Alaska Insurance Guaranty Association*, 592 P.2d 367, 370 n.7 (Alaska 1979) (quoting *Alaska State Bank v. General Insurance Co.*, 579 P.2d 1362, 1370 (Alaska 1978)). There is a presumption that attorney's fees will be awarded to a prevailing party under Rule 82(a). *See, e. g., Stordahl v. Government Employees Insurance Co.*, 564 P.2d 63, 68 (Alaska 1977). Nevertheless, the superior court's decision that an assessment of attorney's fees against plaintiffs Hickel and Merdes would have been improper was not an abuse of discretion.

In *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974), this court held that "it is an abuse of discretion to award attorney's fees against a losing party who has in good faith raised a question of genuine public interest before the courts."[5] Like this case, *Gilbert* involved a plaintiff who unsuccessfully challenged the propriety of state election procedures.[6]

It was not unreasonable for the superior court to find that the plaintiffs, exercising their rights under the election contest statute, AS 15.20.540, were public interest litigants against whom an assessment of attorney's fees would have been improper. Plaintiffs who in good faith seek to vindicate the strong public policy favoring fair and correctly conducted elections should not be penalized by an assessment of attorney's fees unless the suit is frivolous.

Finally, the State argues that the superior court lacked authority to assess costs and attorney's fees against the State because it was a co-prevailing party.

We agree that Rules 54(d) and 82(a) did not authorize the award of costs and attorney's fees in this case. Those rules authorize awards to "prevailing parties."[7] Croft was not a prevailing party for purposes of an award to him and against the State under these rules because he did not prevail over the party against whom costs and fees were assessed, *i. e.*, the state election officials. As we recently indicated, these rules authorize a court to tax costs "against the party *not prevailing* in the action." *Guin v. Ha*, 591 P.2d 1281, 1285–86 (Alaska 1979) (emphasis added). The State

fees against the plaintiffs would have been improper. As indicated, we find that premise correct.

Appellants do not make this argument with respect to taxation of costs. Because they failed to so argue and because the plaintiffs are not parties to the appeal, we do not decide whether the superior court erred in not taxing costs against the plaintiffs. We note, however, that we have never applied a public interest exception to preclude taxation of costs against the losing party under Rule 54(d).

5. *Accord, Crisp v. Kenai Peninsula Borough School District*, 587 P.2d 1168 (Alaska 1978).

6. Specifically, *Gilbert* asserted that the state constitution's residency requirements for state senate candidates violated his federal equal protection rights. 526 P.2d at 1132.

7. Awards of costs are authorized by AS 09.60.-010 as follows:

Except as otherwise provided by statute, the supreme court shall determine by rule or order what costs, if any, including attorney fees, shall be allowed the prevailing party in any case.

With respect to costs, Civil Rule 54(d) provides:

Except when express provision therefor is made either in a statute of the state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs. The procedure for the taxing of costs by the clerk and review of his action by the court shall be governed by Rule 79.

Attorney's fees are governed by Rule 82, which provides in pertinent part:

(a) *Allowance to Prevailing Party as Costs.*

(1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

.     .     .     .     .

Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion in a reasonable amount.

was a prevailing party because the validity of the election was upheld.

The superior court's award was justified, however, by reason of the inherent equitable power of the court to award attorney's fees when the interests of justice so require. This power has been discussed by the United States Supreme Court as follows:

> Although the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require. Indeed, the power to award such fees "is part of the original authority of the chancellor to do equity in a particular situation," *Sprague v. Ticonic National Bank*, 307 U.S. 161, 166, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939), and federal courts do not hesitate to exercise this inherent equitable power whenever "overriding considerations indicate the need for such a recovery." *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391–392, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1970); see *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967).

*Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–46, 36 L.Ed.2d 702, 707 (1973) (footnotes omitted).

As our opinion in *Hammmond v. Hickel* reveals, this litigation was caused by the irregularities of state election officials in the conduct of the election. For example, 247 questioned ballots were misplaced by election officials and discovered in an unlocked cabinet in the Anchorage election office after the certification of the primary election nominees. We ordered that the ballots be counted and added to the totals of the various candidates. 588 P.2d at 262. We also held that "the admitted mishandling of . . . 97 ballots constituted malconduct on the part of election officials, and the ballots should not have been included in the vote totals of the various candidates." *Id.* at 263. Thirty-five absentee ballots were also counted illegally, and we directed that they not be counted. *Id.* at 269.

Certain other irregularities were held not to justify a change in vote totals, but do further illustrate the state's responsibility for this litigation. Election officials violated the requirements of AS 15.20.690 regarding the handling of ballots in the event of a computer malfunction. *Id.* at 270. One hundred forty-one ballots were discarded rather than mailed to the lieutenant governor, as required by AS 15.15.370. We noted that this was "a significant deviation from the positive statutory duty placed upon the election board." *Id.* at 261. Finally, the handling of 2,000 ballots by an election clerk—leaving them in his car overnight while it was parked at his residence—was held to be malconduct. *Id.* at 260–61.

Croft properly acted as a defendant in the statutory election contest action because, as a winner in the primary, his interests were clearly adverse to those of the plaintiffs. It was the state, however, which was responsible for the conduct of the election. Because of this responsibility, the superior court's assessment of Croft's costs and partial attorney's fees against the state served to prevent an injustice to Croft. This was an exceptional case in which the court rules as to costs and fees did not adequately protect the interests of justice. The award was, therefore, within the inherent equitable power of the court.

AFFIRMED.

BURKE, J., dissents.

MATTHEWS, J., not participating.

BURKE, Justice, dissenting.

I respectfully dissent. While the superior court may have "inherent equitable power" to award costs and attorney's fees in certain cases, I am not convinced that its award in this case was proper.