**MUNICIPALITY OF ANCHORAGE and Lejane Ferguson, Appellants, Cross–Appellees,**

v.

**CITIZENS FOR REPRESENTATIVE GOVERNANCE, Carol Stolpe, Walter Featherly and Dorothy Cox, Appellees, Cross–Appellees,**

**and**

**Yes for Recall, Appellee, Cross–Appellant.**

Nos. S–5616, S–5626.

Supreme Court of Alaska.

Sept. 16, 1994.

Scott A. Brandt–Erichsen, Asst. Mun. Atty., Richard L. McVeigh, Mun. Atty., Anchorage, for appellants.

Jonathan B. Rubini, Birch, Horton, Bittner & Cherot, and Walter T. Featherly, Koval & Featherly, Anchorage, for appellees/cross-appellees.

Raymond H. Royce and Brent A. Johnson, Law Offices of Royce & Brain, Anchorage, for appellee/cross-appellant.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. Pro Tem.*

## OPINION

COMPTON, Justice.

Three Anchorage School Board (Board) members challenged the validity of petitions to recall them from office. They lost both the case and their elected offices. The superior court ruled that they were public interest litigants, and thus denied the Municipality's motion for attorney's fees. This appeal followed. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Yes For Recall (YFR) is an unincorporated association formed to organize the recall of Anchorage School Board Members Walter Featherly, Carol Stolpe, Cabot Christianson and Dorothy Cox. Less than 12,000 recall petition signatures for each Board member were required to place the issue on the ballot. YFR submitted over 18,000 signatures to the Municipal Clerk for each Board member. The Municipal Clerk originally determined that only about 4,500 of the signatures were valid and rejected the petitions.[1] YFR filed suit. Superior Court Judge Karl S. Johnstone ruled that the petition sponsors did not have to register with the Municipal Clerk before seeking signatures; he ordered the petitions certified as valid. The Anchorage Municipal Assembly set a special recall election for December 15. The Municipality stipulated that YFR was a prevailing public interest litigant in that litigation and paid YFR $30,000 in attorney's fees and costs.

Citizens For Representative Governance (CFRG) is an unincorporated association formed to oppose the recall of the Board members. Its officers are Nick Begich and Sheelah Slade. After the petitions were certified, CFRG filed suit to stop the recall election, alleging that some of the petition subscribers were not registered to vote at the time that they signed the recall petition. YFR intervened in the litigation. Superior Court Judge Brian C. Shortell denied CFRG's motion for an injunction. On the day of the election, Stolpe, Featherly and Cox[2] agreed to join the suit individually as plaintiffs. All three were recalled in an election marked by low voter turnout. Their suit continued. The superior court temporarily enjoined the certification of the election results while CFRG compiled a list of challenged signatures. Originally CFRG challenged 2,682 signatures. After clarifying that subscribers did not have to be registered for thirty days before signing, the list was reduced to about 1,000 challenged signatures. At a hearing on January 8, counsel for the Municipality disclosed for the first time that the Municipal Clerk had not counted from 2,200 to 4,000 additional signatures. Counsel for CFRG realized that even if all of the 1,000 challenged signatures were invalid and even if there were only 2,200 rather than 3,000 or 4,000 new signatures, there were

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. After further review, the Municipal Clerk increased her estimate of the number of valid recall signatures, but the total remained well below the number required.

2. This court is concerned only with the interests of CFRG, Stolpe and Featherly. Cabot Christianson resigned before the recall election. He never joined the litigation. Dorothy Cox filed for bankruptcy after the recall election. The Municipality and YFR limit their arguments to the extent required by the automatic bankruptcy stay dated July 13, 1993. No party has indicated any way that the public interest status of Board Member Cox differs from Board Member Stolpe. Because of our disposition of the case, we need not reach the effect of the bankruptcy stay.

now sufficient signatures under any reasonable error rate.[3]

Counsel for CFRG moved to dismiss the case with prejudice, but specifically referred to the "one delicate issue that lingers out there": attorney's fees. He characterized the suit as "classic public interest litigation" and noted the inequities of the late disclosure of dispositive information by the Municipality. The court granted the motion to dismiss and reserved determination on the issue of attorney's fees.

The Municipality moved for attorney's fees of $17,700.80 and costs of $1,499.28. YFR moved for attorney's fees of $29,749 and costs of $3,845.45. The court denied both motions. It held that CFRG, Stolpe, Featherly and Cox were all public interest litigants. The Municipality and YFR appealed.

## II. *DISCUSSION*

### A. CFRG, STOLPE AND FEATHERLY ARE PUBLIC INTEREST LITIGANTS.

■ A trial court's determination of whether a party is a public interest litigant is reviewed for an abuse of discretion. *Citizens Coalition for Tort Reform, Inc. v. McAlpine*, 810 P.2d 162, 171 (Alaska 1991).

#### 1. CFRG is a Proper Party to This Action.

■ YFR argues that only the individual board members can bring the suit. However, public interest litigants may organize to protect their rights or advance their cause. *See, e.g., Alaska Survival v. State, Dep't of Natural Resources*, 723 P.2d 1281, 1292 (Alaska 1986); *Oceanview Homeowners Ass'n v. Quadrant Constr. & Eng'g*, 680 P.2d 793, 799 (Alaska 1984); *Southeast Alaska Conservation Council, Inc. v. State*, 665 P.2d 544 (Alaska 1983). Additionally, no reason has been suggested to differentiate between an incorporated and an unincorporated association or between a general purpose association and one formed for a particular purpose. Generally, we analyze the public interest litigant status of the group by looking to the status of the members. *Alaska Survival*, 723 P.2d at 1292 (looking to individual members' use of disputed land). When a group does not reveal the identity of its members, a court may not be able to determine the group's public interest status. *Citizens Coalition*, 810 P.2d at 171–72. However, the identity and motivation of CFRG is not so murky.

■ The Municipality and YFR note that the challenged Board Members were "closely involved" with CFRG and personally interested in the outcome. In fact, YFR alleges that CFRG is simply an "alter ego" for Featherly and Stolpe. We accept this characterization for the purpose of determining CFRG's public interest status. If Featherly and Stolpe are public interest litigants, CFRG is a public interest litigant.

#### 2. Featherly and Stolpe are Public Interest Litigants.

■ To qualify as a public interest litigant, a party must meet a four-part test.

(1) Is the case designed to effectuate strong public policies?

3. The developments in the number of valid signatures are summarized below.

| Signatures | Stolpe | Featherly | Cox |
|---|---|---|---|
| Submitted for Recall | 19,074 | 18,834 | 19,020 |
| Required for Recall | 11,871 | 11,591 | 11,387 |
| Certified Count | 12,205 | 12,004 | 12,154 |
| Margin at Election | 334 | 413 | 767 |
| Plaintiff's Alleged Errors | 1,000 | 1,000 | 1,000 |
| Plaintiff's Alleged Count | 11,205 | 11,004 | 11,154 |
| Plaintiff's Alleged Margin | − 666 | − 587 | − 233 |
| Defendant's New Names | 2,200 | 2,200 | 2,200 |
| Petition Error Rate | 59% | 58% | 59% |
| New Valid Names | 1,298 | 1,276 | 1,298 |
| New Count | 12,503 | 12,280 | 12,452 |
| **New Margin** | **632** | **689** | **1,065** |

(2) If the plaintiff succeeds will numerous people receive benefits from the lawsuit?

(3) Can only a private party have been expected to bring the suit?

(4) Would the purported public interest litigant have sufficient economic incentive to file suit even if the action involved only narrow issues lacking general importance?

*Id.* at 171 (quoting *Anchorage Daily News v. Anchorage Sch. Dist.,* 803 P.2d 402, 404 (Alaska 1990)).

In *McCormick v. Smith,* 799 P.2d 287, 288 (Alaska 1990), we held that a school board member who sought to enjoin her recall from office was a public interest litigant. This case is largely governed by the holding in *McCormick.*

First, the superior court found that the suit was "designed to effectuate strong public policies favoring fair and correctly-conducted elections." The proposition that our democratic society has a strong public interest in fair elections is tautological.

■ Rather than face the daunting task of a rhetorical assault on this proposition, the Municipality and YFR attempt a flanking maneuver by arguing that CFRG was motivated by personal rather than public objectives. To the extent that this argument suggests that CFRG brought the suit in bad faith the record lends no support. Public interest litigants must file and pursue their suit in good faith. *McCormick,* 799 P.2d at 288 n. 4; *Falke v. State,* 717 P.2d 369, 376 n. 10 (Alaska 1986). "Plaintiffs who *in good faith* seek to vindicate the strong public policy favoring fair and correctly conducted elections should not be penalized by an assessment of attorney's fees *unless the suit is frivolous.*" *Thomas v. Croft,* 614 P.2d 795, 798 (Alaska 1980) (emphasis added). The court found that the suit was brought in good faith and that the outcome of the suit "was unpredictable until the last hearing, at which the Municipality revealed for the first time that it had erroneously rejected thousands of recall petition signatures."

■ The Municipality and YFR argue that the suit was frivolous because CFRG should have intervened in the original litigation brought by YFR. A fair reading of the record supports CFRG. Until Judge Johnstone's final order, the recall petition had been rejected. When the petitions were approved, there was a narrow margin for error and good reason to believe that invalid signatures had been counted. The suit was not frivolous.

■ Second, the court found that the suit "exposed questionable election procedures" and "numerous people would have benefited had the plaintiffs prevailed." The Municipality characterizes as speculative the claim that numerous persons would have benefited from the suit. It mistakenly searches for other particular individuals that might be aided by the suit (future recall targets), rather than recognizing the interest that all the citizens of the state have in sound election and recall procedures. In *McCormick,* this court held that an officeholder's challenge to a recall petition met the first two parts of the test. The public's interest in maintaining the procedural integrity of the election process was sufficient and the public would benefit from vindication of that interest. *McCormick,* 799 P.2d at 288–89.

Third, the court found that "[o]nly private persons or organizations could be expected to file this action."[4] We have stated that "[o]nly private persons—the officials sought to be recalled—could be expected to file a lawsuit challenging improprieties related to scheduling a recall election." *McCormick,* 799 P.2d at 287–88. Featherly and Stolpe meet this requirement of the test.

■ Fourth, the court found that "none of the plaintiffs had sufficient independent economic incentive to file suit." The Municipality and YFR emphasize that Featherly, as School Board President and Stolpe, as a Board member, received stipends of $1,150

---

4. The Municipality and YFR equivocate. The Municipality makes a contradictory rebuttal: 1) CFRG is not a "private party" under the test, and 2) the fact that CFRG sued before Featherly and Stolpe joined shows that other "private parties" could be expected to file suit. YFR assumes "arguendo" that CFRG would meet this requirement.

and $900 per month respectively. The public interest litigant in *McCormick* served on the school board without compensation. *McCormick,* 799 P.2d at 288. The Municipality and YFR seize upon this to distinguish the present case.

Because a salary is usually a sufficient economic incentive to file suit, employees seeking reinstatement or increased salary are normally not public interest litigants. *Rosen v. State Bd. of Pub. Accountancy,* 689 P.2d 478, 480 (Alaska 1984) (accountant); *Acevedo v. City of North Pole,* 672 P.2d 130, 137 (Alaska 1983) (police officer); *Storrs v. State Medical Bd.,* 664 P.2d 547, 550 (Alaska) (license to practice medicine), *cert. denied,* 464 U.S. 937, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983); *Rouse v. Anchorage Sch. Dist.,* 613 P.2d 263, 266–67 (Alaska 1980) (teacher). However, a number of cases stand for the proposition that the normal compensation of an elected office is not sufficient economic incentive to defeat the public interest status of an officeholder or candidate seeking to vindicate a public interest. *Falke,* 717 P.2d at 376 n. 10 (Alaska Senate); *Thomas,* 614 P.2d at 797–98 (Alaska Governor, under unusual facts); *Gilbert v. State,* 526 P.2d 1131, 1136 (Alaska 1974) (Alaska Senate). The distinction between these two lines of cases is justified by the strong public interest in fair and honest elections. If there is a good faith, nonfrivolous claim of error in an election, there is a strong state interest in seeing that the election results are quickly validated or corrected. Often the candidate or officeholder is the only person likely to file suit. Featherly and Stolpe should not be denied public interest status merely because of their stipends.

█ The Municipality and YFR make a related argument that Featherly and Stolpe were motivated by personal rather than public interest concerns. In other words, they were more concerned about keeping their

offices than promoting fair elections. A public interest litigant's goals need not be purely altruistic. Simply, they must not have a "significant economic interest" in the case. Most, if not all, public interest litigants may have some personal interest in the case beyond the broad public policy vindicated.

The evidence supports the trial court's finding, that Featherly and Stolpe meet each requirement of the test. Therefore, CFRG. also meets the test.

**B. THE TEST SHOULD NOT BE CHANGED**

The Municipality asks that we modify one element of and add a new element to the present four-part public interest litigant test.[5] Neither the Municipality nor YFR appears to have raised these arguments before the trial court. We address these arguments because they are not dependent on any new or controverted facts and relate generally to the Municipality's trial court theory that CFRG, Featherly and Stolpe were not public interest litigants due to their personal interest in the outcome of the litigation. *See O'Neill Investigations, Inc. v. Illinois Employers Ins.,* 636 P.2d 1170, 1175 n. 7 (Alaska 1981).

Under the doctrine of stare decisis, we will overrule a prior decision only when "clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent, ..." A decision may prove to be originally erroneous if the rule announced proves to be unworkable in practice. Additionally, a prior decision may be abandoned because of "changed conditions" if "related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine, [or] facts have so changed or come to be seen so differently, as to

5. Although the Municipality distinguishes between offensive and defensive use of public interest status, it proposes essentially the same modifications to both. It proposes that good faith be added as a sixth element to defensive use. However, we already consider good faith pursuit of a nonfrivolous suit to be a requirement for public interest status, whether used offensively or defensively. *See Thomas,* 614 P.2d at 798. Finally, the Municipality argues that a public interest litigant should be required to bring the suit within a reasonable time in order "to minimize the cost and inconvenience to the public." Because we conclude that CFRG acted reasonably under the circumstances, we need not address the propriety of adding this requirement to the test.

have robbed the old rule of significant application."

*Pratt & Whitney Canada, Inc. v. Sheehan,* 852 P.2d 1173, 1176 (Alaska 1993) (citations omitted).

The Municipality appears to argue that the test was originally erroneous because it has proven unworkable. In the Municipality's view, it is unworkable because even suits truly in the public interest automatically take money from the public coffers that could be used for other, and presumably more beneficial, public purposes. The state or local government defendant should have the power to decide whether to pay the public interest litigant or use the money to build a road, hire a teacher, or lower taxes. "The public interest litigant exception should be limited to those who, but for their public interest status, would not be able to bring the case."

■■■ The Municipality would implement this limitation through two modifications to the present test. First, the Municipality argues that the fourth element should be modified so that *any* interest in the litigation, economic or otherwise, would disqualify a party from public interest status. We reject this suggestion. We have previously recognized that a party may be a public interest litigant despite some personal interest in the outcome. *Alaska Survival,* 723 P.2d at 1292; *Oceanview Homeowners Ass'n,* 680 P.2d at 799. The members of Alaska Survival opposed the farming of certain parcels of State land because the members hunted, fished, and gathered wood on the land. *Alaska Survival,* 723 P.2d at 1292. They had an aesthetic and recreational interest in seeing that the land was not turned to agricultural uses. Oceanview homeowners sought to prohibit expansion of a local airstrip runway. *Oceanview Homeowners Ass'n,* 680 P.2d at 796–97. The homeowners had health and safety concerns over increased air traffic. In both cases, the public interest litigants had personal interests in the outcome of the litigation. In both cases, they had a peripheral economic interest in the outcome as well. But the primary motivation for and effect of the lawsuit was to vindicate the public interest. Indeed, when the state takes an arguably improper action affecting the public in-terest, the persons most likely to step forward and challenge the action are those with some aesthetic, health, moral, political, recreational, religious, political, safety, social or other personal interest in the outcome. We rightly require that these parties not have an *economic* stake in the outcome sufficient to prompt the suit without public interest litigant status. But imposing a requirement that the litigant be completely disinterested sweeps too broadly.

■■■ Second, the Municipality would add a fifth element; no person worth over one million dollars or corporation worth over two million dollars can be a public interest litigant. There is neither an allegation nor a showing that any of the participants in this case are worth more than these limits. The proposed rule would be cumbersome in application. More importantly, such a rule is unnecessary. Cases introducing and refining the requirement that the litigant not have a sufficient economic interest in the litigation have involved large and presumably wealthy corporations. *See, e.g., Mobil Oil Corp. v. Local Boundary Comm'n,* 518 P.2d 92, 104 (Alaska 1974); *Lynden Transport, Inc. v. State,* 532 P.2d 700, 717 (Alaska 1975); *Weaver Bros., Inc. v. Alaska Transp. Comm'n,* 588 P.2d 819, 823 (Alaska 1978); *Kenai Lumber Co. v. LeResche,* 646 P.2d 215, 222–23 (Alaska 1982). Yet in each case, we focused on the possible economic motivation of the litigant, not the litigant's net worth. We continue to believe that this is the proper focus.

## III. CONCLUSION

CFRG, Featherly and Stolpe are public interest litigants. They meet the requirements of the test. We are not persuaded there is any reason to change the test. The judgment of the trial court is AFFIRMED.