*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| LANCE PRUITT, | ) |
| | ) Supreme Court No. S-18191 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-20-09661 CI |
| v. | ) |
| | ) O P I N I O N |
| STATE OF ALASKA, OFFICE OF LT. | ) |
| GOVERNOR, and KEVIN MEYER, in | ) No. 7644 – March 24, 2023 |
| an official capacity, DIVISION OF | ) |
| ELECTIONS, and GAIL FENUMIAI, in | ) |
| an official capacity, | ) |
| | ) |
| Appellees, | ) |
| | ) |
| ELIZABETH A. HODGES SNYDER, | ) |
| | ) |
| Intervenor-Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Josie Garton, Judge.

Appearances: Stacey C. Stone, Holmes Weddle & Barcott, P.C., Anchorage, for Appellant. Holly C. Wells, Jennifer C. Alexander, and Zoe A. Danner, Birch Horton Bittner & Cherot, Anchorage, for Intervenor-Appellee. Notice of nonparticipation filed by Laura Fox, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellees.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

CARNEY, Justice.

## I.     INTRODUCTION

After narrowly losing an election a candidate brought an election contest alleging that the Division of Elections had behaved improperly and allowed some voters to cast ballots without meeting constitutional and statutory residency requirements.  The superior court affirmed the Division's certification of the election in favor of the opposing candidate and dismissed his suit.

The winning candidate moved for attorney's fees and costs, alleging that certain claims made in the election contest were frivolous or in bad faith.  The superior court agreed and awarded the winning candidate full attorney's fees and costs in connection with those claims.  The losing candidate appeals, claiming protection from an adverse attorney's fees award as a constitutional claimant per AS 09.60.010, and arguing that the superior court failed to follow proper procedure for imposing fees and costs as sanctions.

We conclude that the unsuccessful candidate's constitutional claims were not frivolous or in bad faith.  But — to the extent the superior court's award of attorney's fees and costs was intended as a sanction for violating court rules — the unsuccessful candidate is not exempt from the imposition of such sanctions after notice and an opportunity to be heard.  We therefore reverse the award of attorney's fees and costs and remand for further proceedings addressing whether sanctions could be awarded for violations of court rules.

## II.    FACTS AND PROCEEDINGS

### A.     Election Contest

Elizabeth Snyder narrowly defeated incumbent Lance Pruitt in the November 2020 general election in House District 27.  After the results were confirmed

-2-                                                                                         **7644**

in a recount, Pruitt brought an election contest under AS 15.20.540 and 15.20.550.[1] He alleged that the Division had failed to fulfill its responsibility to ensure a fair election in a number of ways, including by permitting at least one individual to vote twice and allowing individuals to vote who did not meet constitutional and statutory residency requirements. Snyder intervened in Pruitt's action against the Division.

Trial was scheduled for December 22 and 23, 2020. On December 17 Pruitt withdrew the double-voting allegation. On the same day Pruitt requested that the court take judicial notice of certain residency-related documents regarding 21 voters he alleged voted in House District 27 but were not residents during the relevant time.[2] On December 18 Snyder served interrogatories and requests for production regarding the motion for judicial notice and Pruitt's underlying allegation. On December 21 — the day before trial — Pruitt objected to most of Snyder's discovery requests on the basis of attorney-client privilege and attorney work product, and he refused to provide any discovery beyond that previously provided.

Snyder opposed the motion for judicial notice. She argued first that judicial notice could not be taken of disputed issues. Specifically, she argued that home ownership records were not indisputable proof of residency because they did not reflect a voter's residency intent[3] — for example, they would not indicate whether the voter had

---

[1] *See Pruitt v. State, Off. of Lieutenant Governor* (*Pruitt I*), 498 P.3d 591 (Alaska 2021) for a detailed factual background. Here we describe only those details relevant to resolving the attorney's fee dispute.

[2] The documents were certified copies of residence records and property deeds obtained from the Municipality of Anchorage, the Matanuska-Susitna Borough, and the Recorder's Office at the Department of Public Resources.

[3] *See* AS 15.05.020 (explaining that absence from a place will not defeat residency so long as person has intention to return).

only temporarily left that district. She argued that a voter's registration record provided the presumptive place of residence for voter residency purposes. Snyder argued that voter residence therefore "is not a fact appropriate for judicial notice," but is a legal conclusion to be drawn from factual evidence. Second, Snyder argued that Pruitt's allegations were "factually incorrect or reasonably disputed." Of the 21 people that Pruitt alleged had voted improperly, Snyder claimed that 13 had not actually voted in the district, 2 had moved within the same district and thus voted properly; and whether the remaining 6 had lost their voter residency was unclear. Snyder also urged the court not to consider Pruitt's residency challenge, asserting that it should have been raised during the voting or recount process and that considering it now would disrupt the election result.

On the same day Snyder filed her opposition, Pruitt withdrew the voting allegations against all but the six voters whose votes had been counted but whose voter residency was unclear.

Snyder moved to dismiss Pruitt's suit pursuant to Alaska Civil Rule 12(b)(6) for failure to state a claim; the superior court granted her motion on December 22. The court had dismissed the motion for judicial notice on December 21 given that "[v]oter residency is not a fact subject to judicial notice." On December 23, after it dismissed the election contest, it also dismissed as moot Pruitt's updated motion for judicial notice that had withdrawn some of the voters. The superior court issued a final judgment declaring Snyder the winner, and Pruitt appealed the dismissal of his claim that the Division had committed malconduct. We concluded the superior court had erred by dismissing the case on the ground that Pruitt had failed to state a claim, but we

nonetheless affirmed dismissal because Pruitt's claims could not succeed on the merits.[4] We also affirmed the superior court's judgment pronouncing Snyder the winner.[5]

### B.    Motion For Attorney's Fees

Snyder moved for attorney's fees and costs as the prevailing party. She sought enhanced fees as provided by Alaska Civil Rule 82(b)(3) only for work addressing the "frivolous pleadings or claims" raised by Pruitt that she alleged were "at best, unreasonable, and at worst, brought in bad faith." She sought "all or substantially all" attorney's fees incurred responding to Pruitt's double-voting allegation, responding to his motion for judicial notice, and preparing discovery requests related to the residency allegations. Snyder stated that her actual reasonable attorney's fees were $122,548.67 and she requested $20,782.50. Snyder calculated that the requested amount was less than 17% of the total fees incurred in the action, rather than the full 20% that she could have sought by statute.[6]

Pruitt opposed Snyder's motion for attorney's fees and costs, asserting he was a constitutional claimant protected by AS 09.60.010 from an adverse fee award.[7]

---

[4]    *Pruitt I*, 498 P.3d at 595.

[5]    *Id.* at 595, 608.

[6]    *See* Alaska R. Civ. P. 82(b)(2).

[7]    AS 09.60.010(c)(2) provides that

> In a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court . . . may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant . . . did not prevail in asserting the right, the action or appeal asserting the right was

(continued...)

Pruitt contended that because he made a nonfrivolous constitutional claim and did not have an economic incentive to bring the election contest, he met the statute's requirements to be exempt from an award of attorney's fees.

Snyder disputed that Pruitt met the requirements for a constitutional claimant. She claimed that the action was frivolous, pointing to Pruitt's failure to provide evidence that the Division's actions prevented voters from voting, his filing the complaint "with total disregard" for the legal grounds required for an election contest, and the superior court's ultimate dismissal of the case for failure to state a claim. Snyder also claimed that Pruitt had an economic incentive to bring his action because, as the incumbent, he stood to lose his salary, per diem, and reimbursement of business expenses.

The superior court partially granted Snyder's motion for attorney's fees and costs. The court recognized that "the strong public interest in fair and honest elections justifies according public interest litigant status to officeholders or candidates pursuing a claim of error in an election."[8] It therefore concluded that Pruitt "may not be ordered to pay attorney's fees unless the action was frivolous." Relying on *Alaska Building, Inc.*

---

(...continued)
> not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved.

[8]   *See also Mun. of Anchorage v. Citizens for Representative Governance*, 880 P.2d 1058, 1062-63 (Alaska 1994) (citing strong public interest in fair and honest elections when concluding that normal compensation of elected office is not sufficient economic incentive to defeat political candidate's status as public interest litigant). The superior court recognized that amendments to AS 09.60.010 abrogated the common law public interest exception to Rule 82 in 2003, but the economic incentive prong and case law interpreting it remained applicable. *See Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 280-81 (Alaska 2015).

*v. Legislative Affairs Agency*,[9] the court noted that claims are not frivolous merely because they have "little reasonable likelihood of success" or seek to modify or establish new law. Rather, a claim can only be considered frivolous "where a party exhibits an improper or abusive purpose, or acts in bad faith." And the court recognized that it must be cautious when finding frivolousness to distinguish an "abuse of the judicial process" from "creative advocacy."[10]

The court focused on the three grounds upon which Snyder based her attorney's fees request. After apparently agreeing with Pruitt that "generally . . . his lawsuit was non-frivolous," the court noted that Pruitt "d[id] not address [Snyder's] claim that he failed to respond adequately to her discovery requests." It then considered the expedited schedule of election contests and the important public interests at stake and found that, by waiting until the day before trial to respond to Snyder's discovery requests and failing to argue that he actually "met his discovery obligations or acted in good faith," Pruitt had acted in bad faith. The court concluded that by acting in bad faith, Pruitt had brought a frivolous action and was not entitled to protection from attorney's fees as a constitutional claimant under AS 09.60.010(c).[11] The court awarded Snyder "actual attorney's fees for preparation of her interrogatories and requests for production."

The superior court also found that Pruitt's "argument that the court should take judicial notice of voter[s]' non-residency was unsupported by existing law or any argument, however creative or unlikely to succeed, that the law should be modified." It

---

[9] 403 P.3d 1132 (Alaska 2017).

[10] Citing *id.* at 1139.

[11] The court, citing *Alaska Building, Inc. v. Legis. Affs. Agency*, 403 P.3d 1132, 1147 (Alaska 2017), concluded that "where a party . . . acts in bad faith, a claim may be deemed frivolous."

observed that Pruitt had not cited any law governing voter residency or why it should be modified, or explained how the court could use property transaction records as a basis for taking judicial notice of voter residency. The court found that Pruitt's argument was not "creative advocacy" but rather "an abuse of the judicial process" and, consequently, frivolous. It awarded Snyder "fees for her legal and factual research and drafting efforts to oppose and respond to [Pruitt's] motions for judicial notice and for review of the deeds, foreclosure records, and tax records of voters."

The court denied Snyder's request for fees related to responding to Pruitt's double-voting allegation. It found that Snyder had not established that the claim amounted to an abuse of the judicial process.

Pruitt moved for reconsideration. He argued that because the action itself was not frivolous, the court could not award fees under AS 09.06.010(c). Alternatively, Pruitt argued, even if the court could separately consider claims made within the same suit to determine which were protected as constitutional claims, it erred by finding he had failed to respond to discovery or Snyder's allegations of bad faith in her motion for attorney's fees. Pruitt contended he had responded by asserting that he was a constitutional claimant who acted in good faith. Additionally, Pruitt noted that Snyder never filed a motion to compel discovery, so to the extent the court's award of fees and costs could be considered discovery "sanctions," they were inappropriate.

After granting reconsideration, the superior court issued a final judgment granting Snyder partial attorney's fees of $17,465.00 and actual costs of $3,751.31.

Pruitt appeals. He argues that the superior court erred by awarding fees and costs to Snyder because he is a constitutional claimant and, that if the court imposed the fees and costs as sanctions, the court erred by failing to follow proper procedures. We agree that Snyder was not entitled to Rule 82 attorney's fees and costs for work opposing Pruitt's nonfrivolous constitutional claim; we therefore vacate the attorney's fees award.

And we remand for appropriate application of the sanctions rules and procedures.

## III. STANDARDS OF REVIEW

"Interpretation of the constitutional litigant exception to attorney's fees is a question of law, which we review using our independent judgment."[12] "We interpret statutes 'according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters.' "[13]

## IV. DISCUSSION

### A. Alaska Statute 09.60.010 Protects Constitutional Claimants Asserting Nonfrivolous Constitutional Claims From Rule 82 Attorney's Fees Awards.

Rule 82 generally governs the award of attorney's fees, entitling prevailing parties to a certain percentage of their fees "[e]xcept as otherwise provided by law."[14] Rule 82(b)(3) allows the court to vary an award based on certain factors including "vexatious or bad faith conduct" and "other equitable factors deemed relevant."[15] Vexatious or bad faith conduct can be determined directly or through inference and can serve as a basis for a court to award full attorney's fees.[16]

Alaska Statute 09.60.010 establishes certain exceptions to Rule 82. In

---

[12] *Manning v. State, Dep't of Fish & Game (Manning III)*, 420 P.3d 1270, 1278 (Alaska 2018) (citing *Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 279 (Alaska 2015)).

[13] *Oakly Enters., LLC v. NPI, LLC*, 354 P.3d 1073, 1078 (Alaska 2015) (quoting *Native Vill. of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999)).

[14] Alaska R. Civ. P. 82(a).

[15] Alaska R. Civ. P. 82(b)(3).

[16] *Johnson v. Johnson*, 239 P.3d 393, 400-01 (Alaska 2010) (explaining that claim might be "legally or factually so deficient as to reasonably permit an inference of vexatious or bad faith litigation conduct").

particular, AS 09.60.010(c) provides that

> In a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court
>
>  . . . .
>
> (2) may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant as plaintiff, counterclaimant, cross claimant, or third-party plaintiff in the action or appeal did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved.

Thus, a party who has raised nonfrivolous constitutional claims cannot be required to pay the attorney's fees and costs of opposing those constitutional claims. That party, however, may be ordered to pay attorney's fees and costs for a prevailing opponent's work on other, nonconstitutional claims in the same case.[17]

To determine if a claim is frivolous, the court must apply an "objective standard of reasonableness," taking care to avoid stifling "creative advocacy" or the pursuit of novel legal theories.[18] "In most cases, . . . a claim should not be considered frivolous unless the litigant has 'abused the judicial process' or 'exhibited an improper or abusive purpose.' "[19]

---

[17] *See Manning v. State, Dep't of Fish & Game* (*Manning II*), 355 P.3d 530, 539-40 (Alaska 2015).

[18] *Manning III*, 420 P.3d 1270, 1283-84 (Alaska 2018) (citing *Alaska Bldg., Inc. v. Legis. Affs. Agency*, 403 P.3d 1132, 1136-39 (Alaska 2017)).

[19] *Id.* (quoting *Alaska Bldg., Inc.*, 403 P.3d 1137) (explaining frivolousness analysis is akin to that for imposing Rule 11 sanctions).

Pruitt argues that he is protected as a constitutional claimant based on the overall purpose of his "action or appeal." But AS 09.60.010(c) "requires individually determining whether each claim in [the plaintiff's] initial complaint and proposed amended complaint" was a constitutional claim and if it "was frivolous[,] and awarding fees only for the work that was attributable to any frivolous claim(s)."[20] The superior court correctly determined that it should analyze each of Pruitt's claims separately to establish which were constitutional claims and which, if any, were frivolous.

To determine whether a claim is constitutional, we have explained that one must look not at the "source of the rule of law," but instead at the "source of the right asserted."[21] For instance, while voter residency requirements are defined by statute, the right to vote itself is a constitutional right.[22] Thus, in a case where voters asserted that a voter residency statute deprived them of the right to vote, we determined that the claims were properly classified as constitutional claims.[23]

The superior court determined Pruitt's claim regarding voter residency was a constitutional claim. We agree because the source of his claim that only those eligible to vote should be permitted to cast a ballot is in a right guaranteed by a constitutional provision. Pruitt claimed that AS 15.05.010(3), a statute requiring voters to reside in the district for at least 30 days before the election, had been violated. That statutory requirement echoes article 5, section 1 of the Alaska Constitution: "A voter shall have

---

[20] *Id.* at 1283 (outlining claim-by-claim frivolousness analysis); *see also Lake & Peninsula Borough Assembly v. Oberlatz*, 329 P.3d 214, 227 (Alaska 2014) (applying claim-by-claim analysis to determine which claims were constitutional).

[21] *Oberlatz*, 329 P.3d at 226.

[22] *Id.*

[23] *Id.* at 227.

been, immediately preceding the election, a thirty day resident of the election district in which he seeks to vote . . . ." The superior court correctly found that Pruitt's claim seeks to enforce a constitutional requirement and is a constitutional claim.[24]

But it was error to characterize Pruitt's motion practice and response to discovery related to the voter residency claim as "claims" in themselves. The statute requires a court to determine whether a *claim* is constitutional, expressly referring to "the attorney fees of the opposing party devoted to claims concerning constitutional rights."[25] The court's next step is to determine whether the *claim* is frivolous. If the constitutional claim is not frivolous, the constitutional claimant is protected from an adverse award of attorney's fees. Once a party has raised a nonfrivolous constitutional claim, Rule 82 attorney's fees can be awarded only for "work defending solely against non-constitutional claims," not for "work on procedural issues involving the merits of a constitutional claim."[26] Pruitt's motion practice and response to discovery were in furtherance of his constitutional claim that nonresidents had voted in the election district. Because that claim was based on a right whose source is in the constitution and is not a frivolous claim, AS 09.60.010(c) prohibits the award of attorney's fees under Rule 82

---

[24]     *See* AS 09.60.010(c) (defining a constitutional claim as "concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska"); *see also Oberlatz*, 329 P.3d at 226 (explaining AS 09.60.010(c)'s language).

[25]     AS 09.60.010(c)(2).

[26]     *Manning II*, 355 P.3d 530, 540 (Alaska 2015). As a further measure of protection afforded to constitutional claims, the party asserting such a claim benefits from a presumption that the opposing party's procedural work was related to the constitutional claims. To overcome the presumption, the party seeking the attorney's fees award must provide "sufficiently detailed documentation" identifying what work was done for constitutional and nonconstitutional claims in order to enable a superior court to make correct determinations of the allowable awards. *Id.*

to Snyder for fees and costs incurred in relation to that claim.[27]

### B. Sanctions May Be Imposed On Constitutional Claimants.

Yet a constitutional claimant is not immune from the rules that govern proceedings. A claimant that may have otherwise been protected from Rule 82 attorney's fees by AS 09.60.010(c) can be sanctioned by the court when the claimant has engaged in sanctionable conduct in litigation; the court may order the party to pay attorney's fees and costs as sanctions pursuant to civil rules. The purpose behind AS 09.60.010(c) is to prevent "chilling" constitutional litigation, but the requirement that the claim be "not frivolous" is intended to protect against situations where a "litigant has 'abused the judicial process' or 'exhibited an improper or abusive purpose.' "[28] When the court determines that a litigant, including a constitutional claimant, "has 'abused the judicial process' or 'exhibited an improper or abusive purpose,' " the court is authorized

---

[27]    *See Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 280-81 (Alaska 2015) (holding that AS 09.60.010 controls attorney's fees for constitutional claims); *Meyer v. Stand for Salmon*, 450 P.3d 689, 693 (Alaska 2019) (Winfree, J., concurring) ("[P]revailing defendants should not be entitled to an award of non-statutory fees against claimants for *any work* devoted in any reasonably connected way to claimants' constitutional claims." (Emphasis added)); *see also In re Vernon H.*, 332 P.3d 565, 576 (Alaska 2014) ("[A]s a general proposition[,] . . . '[i]f a specific statutory scheme for attorney's fees exists, Civil Rule 82 does not apply' because fees would thus be 'otherwise provided by law' within the meaning of Civil Rule 82(a).") (quoting *Enders v. Parker*, 66 P.3d 11, 17 (Alaska 2003)).

[28]    *Manning III*, 420 P.3d at 1284 (internal citation omitted); *see also Alaska Bldg., Inc. v. Legis. Affs. Agency*, 403 P.3d 1132, 1138 (Alaska 2017) (explaining that Rule 11 sanctions are "designed to deter parties from abusing judicial resources, not from filing [claims]" (alteration in original)). Rule 82 in part seeks to effectuate similar purposes. *See Keenan v. Meyer*, 424 P.3d 351, 362-63 (Alaska 2018) ("We have explained that full fee awards against bad faith litigants are unlikely to deter good faith claims, and an enhanced award for bad faith conduct helps compensate the prevailing party for effort and expense that may have been avoidable had the other party acted in good faith.").

to impose sanctions.[29]

Court proceedings are governed by rules that apply to all litigants and give direction to judicial officers. Alaska Civil Rule 11 requires those making representations to the court to meet certain standards and provides:

> By presenting to the court a . . . motion, . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .[30]

Alaska Civil Rule 95 permits the court to impose sanctions for violation of Rule 11. A court may "withhold or assess costs or attorney's fees" against "offending attorneys or parties," "after providing reasonable notice and an opportunity to be

---

[29] Nothing in AS 09.60.010 is intended to exempt litigants from the rules and reasonable limits of the judicial process. *Cf. Thomas v. Croft*, 614 P.2d 795, 798-99 (Alaska 1980) (affirming equitable power of superior court to award prevailing party attorney's fees against co-prevailing state party, even in absence of court rule or statute authorizing such award, because lawsuit would not have happened but for state malconduct in elections).

[30] Alaska R. Civ. P. 11(b).

heard."[31] The rule also allows for a fine, not to exceed $50,000, against an attorney violating the rules.[32]

Alaska Civil Rule 37 authorizes sanctions for failure to cooperate in discovery. It provides that a court may sanction "[a] party that without substantial justification fails to disclose information required by [the discovery rules],"[33] but only "on motion and after affording an opportunity to be heard."[34] One of the enumerated sanctions is attorney's fees.[35] Rule 37 also provides that a court can require a party or attorney to pay "the reasonable expenses, including attorney's fees," caused by "unreasonable, groundless, abusive, or obstructionist conduct during the course of discovery," without requiring a motion but still requiring "opportunity for hearing."[36]

The superior court's order granting attorney's fees implies it determined that Pruitt's motion and conduct in connection with discovery merited sanctions for failure to comply with Rule 11's requirements for representations to the court and Rule 37's discovery obligations. The superior court granted Snyder attorney's fees and costs for Pruitt's failure to comply with discovery (after concluding it was done in bad faith) and for his request to take judicial notice (because it was unsupported by existing law or argument, the court found his motion for judicial notice to be an abuse of judicial process

---

[31] Alaska R. Civ. P. 95(a).

[32] Alaska R. Civ. P. 95(b).

[33] The relevant rules are Rule 26(a) (governing required disclosures) and Rule 26(e)(1) (governing supplementation of disclosures and responses). Alaska R. Civ. P. 37(c)(1).

[34] Alaska R. Civ. P. 37(c)(1).

[35] *Id.*

[36] Alaska R. Civ. P. 37(g).

and therefore frivolous). To support its conclusion that he acted in bad faith, the court noted Pruitt failed to explain how the court could use property transaction records as a basis for taking judicial notice of voter residency and made no argument "supported by existing law or any argument, however creative or unlikely to succeed, that the law should be modified." The court found that Pruitt publicly accused at least 15 voters of improperly voting in the election "without any basis." The superior court found that the motion to take judicial notice of voter residency was "an abuse of the judicial process." But rather than scheduling a hearing, as required by Rule 95 and Rule 11, the court awarded Snyder Rule 82 attorney's fees for Pruitt's actions. This was error.

The superior court also found that Pruitt acted in bad faith by refusing to respond "adequately" to Snyder's discovery requests and thus violated discovery rules. It noted that Pruitt had "not argue[d] that he met his discovery obligations or acted in good faith in responding to [Snyder's] discovery requests." The court's finding that Pruitt failed to comply with his discovery obligations is precisely the behavior that can be sanctioned under Rule 37(c) or (g).[37] But instead of proceeding to a sanctions hearing pursuant to Rule 37, the court instead awarded Snyder Rule 82 attorney's fees. This, too, was error.

As Pruitt argues, the court must follow the procedures specified by the applicable rules before it imposes sanctions.[38] Chief among the requirements is an

---

[37]     We note that the superior court cited both Rule 82(b)(3)(G) and Rule 37(c) in a footnote to its order awarding attorney's fees and cited Rule 26 in another footnote.

[38]     *See Fox v. Grace*, 435 P.3d 883, 887 n.15 (Alaska 2018) ("We also take this opportunity to remind courts that they must follow the mandates of Alaska Civil Rule 95 before issuing a sanctions order pursuant to Rule 11, including issuing an order to show cause and providing for the opportunity to be heard at a hearing."); *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1227-28 (Alaska 1992) (requiring superior
(continued...)

opportunity to be heard.[39]  In addition, Rule 37(c) requires a motion for sanctions.  The failure to comply with the governing rules requires us to reverse the order awarding attorney's fees and to remand to the superior court for further proceedings if the court intends to impose sanctions against Pruitt.[40]  The superior court may receive such evidence and argument on remand as it deems appropriate.

## V.  CONCLUSION

We REVERSE the award of attorney's fees and costs against Pruitt and REMAND for further proceedings consistent with this opinion.

---

[38]  (...continued)
court to clearly state reasons for imposing sanctions and to provide opportunity to contest sanctions at a hearing).

[39]  *See* Alaska R. Civ. P. 37(c)(1) (authorizing sanctions for failure to follow discovery rules, but requiring motion and opportunity to be heard); Alaska R. Civ. P. 37(g) (allowing sanctions for "unreasonable, groundless, abusive, or obstructionist conduct" in discovery but requiring opportunity for hearing); Alaska R. Civ. P. 95(a) (permitting sanctions for Rule 11 violations "after providing reasonable notice and an opportunity to be heard").

[40]  *See Luedtke*, 834 P.2d at 1227 (Alaska 1992) (explaining we typically remand for entry of findings after opportunity to be heard, though we may reverse where no evidence in record supports sanctions); *see also Wilson v. Mun. of Anchorage*, 977 P.2d 713, 727 (Alaska 1999) (remanding for proper findings regarding imposition of sanction against counsel, where court improperly cited Rule 82 for assessment of fees against counsel when Rule does not provide for them).