*Notice:* This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LAKE & PENINSULA BOROUGH ASSEMBLY, | ) ) ) | Supreme Court Nos. S-14945/15055 (Consolidated) |
| Appellant, | ) ) | |
| v. | ) ) | Superior Court Nos. 3DI-11-00023 CI and 3AN-11-12385 CI (Consolidated) |
| DANIEL W. OBERLATZ, RAYMOND "SONNY" PETERSEN, JOHN HOLMAN, JOHN C. GILLAM, and ROBERT B. GILLAM, | ) ) ) ) ) | O P I N I O N<br><br>No. 6923 - July 11, 2014 |
| Appellees. | ) | |
| DANIEL W. OBERLATZ, RAYMOND "SONNY" PETERSEN, JOHN HOLMAN, JOHN C. GILLAM, and ROBERT B. GILLAM, | ) ) ) ) ) | |
| Appellants, | ) ) | |
| v. | ) ) ) | |
| LAKE & PENINSULA BOROUGH ASSEMBLY, and, in their individual and official capacities, Borough Mayor GLEN ALSWORTH, SR., Borough Assembly Members LORENE "SUE" ANELON, LYNN CARLSON, MYRA OLSEN, and RANDY ALVAREZ, and Borough Clerk KATE CONLEY, | ) ) ) ) ) ) ) ) ) ) | |
| Appellees. | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Dillingham, John Suddock, Judge.

Appearances: Gary A. Zipkin, Guess & Rudd P.C., Anchorage, for Appellant/Appellee Lake and Peninsula Borough and Appellees Alsworth, Anelon, Carlson, Olsen, Alvarez, and Conley. Timothy A. McKeever and Scott Kendall, Holmes Weddle & Barcott, P.C., Anchorage, for Appellees/Appellants Oberlatz, Petersen, Holman, J. Gillam, and R. Gillam.

Before: Winfree, Stowers, and Bolger, Justices. [Fabe, Chief Justice, and Maassen, Justice, not participating.]

WINFREE, Justice.

## I.    INTRODUCTION

Five voters each maintain a home in a borough and a home outside that borough. Two of the voters voted in the borough's 2010 election. All five voters voted in the borough's 2011 election. Although each voter was registered to vote in the borough, the borough's canvassing committee rejected the voters' ballots in each election on the ground that the voters were not borough residents. The voters appealed to the superior court and asserted direct claims against the borough and a number of borough officials in their official and individual capacities. The court ruled that the voters were borough residents and legally qualified to vote in the 2010 and 2011 borough elections, and that the voters shall remain eligible to vote in future borough elections absent substantial changes in circumstances. The court denied the voters full reasonable attorney fees against the borough under AS 09.60.010(c), concluding that they did not bring constitutional claims, but awarded them partial attorney fees under Alaska Civil Rule 82. The court also awarded partial attorney fees under Rule 82 to the individual defendants against whom claims had been previously dismissed on immunity grounds.

The borough appeals the merits of the residency determinations and the voters appeal the attorney fees awards. We affirm the superior court's decisions that the voters were borough residents and eligible to vote in the 2010 and 2011 borough elections, but vacate the order that the voters are automatically eligible to vote in future elections. We reverse the superior court's determination that the voters did not bring constitutional claims covered by AS 09.60.010(c), and remand for new attorney fees determinations.

## II.    FACTS AND PROCEEDINGS

### A.    The Voting

The Lake and Peninsula Borough is a home rule borough located in southwest Alaska. Borough elections are conducted by mail, with ballots mailed to those voters registered with the State of Alaska to vote in the Borough. The Borough Clerk reviews returned ballots for compliance with election requirements. The Clerk separates (i.e., challenges) ballots mailed to and returned from addresses outside the Borough for individual review by the Borough's Canvassing Committee (Committee).

In the 2010 Borough election, the Clerk challenged the ballots of Robert Gillam and Daniel Oberlatz because they were mailed to and returned from addresses outside the Borough. Based on public records listing Oberlatz's and Robert Gillam's residential addresses in Anchorage, the Committee unanimously voted to affirm the challenges on the ground that Oberlatz and Robert Gillam were not Borough residents and therefore not eligible to vote in the election. Oberlatz appealed the Committee's decision to the Borough Assembly (Assembly), which denied the appeal.[1]

---

[1]    The Assembly revised the Borough's elections code after the 2010 election. Notably, the new law added factors for the Committee to consider in determining residency and established a process for appealing the Committee's residency decisions

(continued...)

In the 2011 Borough election, the Clerk challenged the ballots of Robert Gillam, John Gillam, John Holman, and Raymond "Sonny" Petersen because they were mailed to and returned from addresses outside the Borough. The Committee sua sponte challenged Oberlatz's ballot based on its 2010 determination of Oberlatz's non-residency. After reviewing the voters' addresses in public records and hearing testimony about their residencies, the Committee sustained the challenges to all five voters' ballots. The voters appealed to the Assembly. Based on information from the voters' sworn affidavits, their attorney's testimony, and the Committee, the Assembly unanimously denied each appeal.

## B.      The Voters' Individual Backgrounds

### 1.      Robert Gillam

Robert Gillam built his first home in the Borough in 1984. He and his family currently own and spend considerable time in a family home in the Borough. He also lives in a house in Anchorage, where his business has an office, for over six months per year. He registered to vote in the Borough in February 2010. Before that time, he was registered to vote in Anchorage and considered himself an Anchorage resident.

### 2.      John Gillam

John Gillam lived in his family's Anchorage home as a child and attended school there. He spent considerable time at his family's home in the Borough where he still has his own room and personal effects. He registered to vote in Anchorage when he turned 18 and voted there regularly until he changed his registration to the Borough in 2011. He went to college outside Alaska, began graduate school in Dublin, Ireland in 2010, and accepted short-term employment in Zug, Switzerland, where he lives. He

_____

[1]      (...continued)
to the Assembly and then to the superior court. Lake and Peninsula Borough Code (L&PBC) 04.15.020, .030 (2014).

spent about 15 to 16 days in the Borough in both 2010 and 2011, but did not visit the Borough in 2012.

### 3.     John Holman

John Holman lived year-round in the Borough until he was seven years old, after which he spent summers at his father's lodge in the Borough.  He purchased his father's lodge in 2007 and lives in a home at the lodge from May through October.  He returns to his house outside the Borough during the winter months.  He was registered to vote in the Palmer-Wasilla area until 2011, but changed his registration to the Borough in 2011 because he considers the Borough to be his home and because he wanted to be eligible to vote on the Save Our Salmon Initiative on the municipal ballot.

### 4.     Daniel Oberlatz

Daniel Oberlatz moved to the Borough in May 1995 and established a business there.  Around 2005 he purchased a house in Palmer for his wife and children to live in.  At that time he owned two houses in the Borough:  his personal residence and his business base.  He sold the personal residence in 2008, around which time his wife and children moved to Anchorage from Palmer.  He uses the business base, which is owned by his company, as his home when he is in the Borough.  He spends 30 to 90 days per year in the Borough for work and recreation, and the remainder of the year in Anchorage.  He and his wife recently purchased land in the Borough on which they plan to build a larger family home.  He registered to vote in the Borough in 1995 and does not appear to have registered or voted elsewhere since that time.

### 5.     Sonny Petersen

Sonny Petersen spent his childhood summers in the Borough at three lodges his father owned.  He purchased the lodges in 1982, and they are now owned by a business he solely owns.  He maintains a separate home at one of the lodges, where he resides from May through October.  He spends the winter months with his family at a

home he owns in Anchorage. He was registered to vote in Anchorage until he changed his registration to the Borough around 1998. He does not remember voting in Borough elections prior to 2008; his residency was not challenged until 2011.

### C. The Superior Court Proceedings

In March 2011 Oberlatz and Robert Gillam filed a superior court action challenging the rejection of their 2010 votes (2010 Voter Litigation); they asserted claims against the Assembly and against Mayor Glen Alsworth, Assembly Members Lorene "Sue" Anelon, Myra Olsen, and Randy Alvarez, and Clerk Kate Conley, in their individual and official capacities. Oberlatz and Robert Gillam alleged that the rejection of their votes violated article V, section 1 of the Alaska Constitution,[2] Alaska and Borough election laws, and various Borough and common law conflict of interest laws. They sought injunctive and declarative relief reinstating them as qualified registered voters in the Borough, enjoining the individual defendants from violating conflict of interest laws, and enjoining the defendants from retaliating against individuals opposed to a specific mining project in the Borough. They also sought relief under 42 U.S.C. § 1983 for declarations of their federal free speech, assembly, and voting rights, and requested unspecified punitive damages.

After the Borough amended its election laws in May 2011 to enumerate various considerations available to the Committee when determining residency, Oberlatz and Robert Gillam amended their complaint in the 2010 Voter Litigation to assert that the new provision violated the Alaska Constitution, the Alaska elections code, and the

---

[2] Article V, section 1 of the Alaska Constitution provides: "Every citizen of the United States who is at least eighteen years of age, who meets registration residency requirements which may be prescribed by law, and who is qualified to vote under this article, may vote in any state or local election."

federal Voting Rights Act.[3] They asked the court to declare the Borough's new residency provision unconstitutional.

In November 2011 Oberlatz, Petersen, Holman, Robert Gillam, and John Gillam filed another superior court action against the Assembly, and against Mayor Alsworth and Assembly Member Anelon in their individual and official capacities, challenging their 2011 ballot rejections (2011 Voter Litigation). The voters alleged the same violations and asked for the same relief as in the 2010 voter litigation, but did not include a federal claim for relief under 42 U.S.C. § 1983.

In December 2011 the superior court in the 2010 Voter Litigation granted summary judgment to the individual defendants on legislative immunity grounds and declared that L&PBC 04.15.020 — the Borough's new residency provision — does not conflict with state law. The court also dismissed the § 1983 claim against all of the defendants, finding no violation of a clearly established federal statutory or constitutional right. The Borough then moved for summary judgment on the remaining claims, arguing that Oberlatz and Robert Gillam failed to timely appeal the Assembly's decision and that Robert Gillam failed to exhaust his administrative remedies. Oberlatz and Robert Gillam opposed, arguing that the Borough's notification process and the common membership of the Committee and Assembly violated their due process rights. In April 2012 the court denied the Borough's motion for summary judgment and declared L&PBC 04.40.020 unconstitutional as a violation of due process because the ordinance established common membership on the decision-making body — the Committee — and the appeals body — the Assembly. Because the Borough's appeals process was unconstitutional, the court granted Oberlatz and Robert Gillam's request for a trial de

---

[3]    42 U.S.C. § 1973c (2006).

novo on the issue of their voting residency.[4]

Meanwhile, in February 2012 the superior court in the 2011 Voter Litigation dismissed the claims against the individual defendants on "absolute immunity or qualified immunity" grounds. The 2010 Voter Litigation and 2011 Voter Litigation then were consolidated in May 2012.

Following a trial de novo on the residency issue, in which the superior court heard testimony from all five voters, the court issued a decision holding: (1) L&PBC 04.40.020 (Committee composition) is unconstitutional; (2) the Borough's procedures for appealing the Committee's decisions in 2010 and 2011 were unconstitutional; (3) the due process flaw in L&PBC 04.40.020 had entitled the voters to a trial de novo on the residency issue; (4) Oberlatz and Robert Gillam were registered voters in and legal residents of the Borough, and were legally qualified to vote in the 2010 election; (5) all five voters were registered voters in and legal residents of the Borough, and were legally qualified to vote in the 2011 election; (6) the voters would remain eligible to vote in the Borough absent substantial changes in circumstances; and (7) L&PBC 04.15.020 (residency considerations) is not invalid. The superior court later issued a revised decision explaining that the voters were Borough residents under Alaska law and legally qualified to vote in Borough elections because each voter had a fixed place of habitation and genuinely intended to remain in the Borough as home.

D.     **Attorney Fees Proceedings**

The individual defendants in the 2011 Voter Litigation moved for attorney

_____

[4]     *See* Alaska R. App. P. 609(b)(1) ("In an appeal from an administrative agency, the superior court may in its discretion grant a trial de novo in whole or in part.").

fees under Alaska Civil Rule 82(b)(2)[5] shortly after the claims against them were dismissed on immunity grounds. The voters opposed on the basis that AS 09.60.010(c)(2) protected them from attorney fees liability.[6] The superior court granted the individual defendants' motion, awarding $468 in fees.

Following the superior court's final judgment in the consolidated cases, the

---

[5] Alaska R. Civ. P. 82(b)(2) provides in relevant part:

In cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred, and shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred.

[6] AS 09.60.010(c) provides:

In a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court

(1)  shall award, subject to (d) and (e) of this section, full reasonable attorney fees and costs to a claimant, who . . . has prevailed in asserting the right;

(2)  may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant . . . did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved.

voters moved for an attorney fees award of $155,319 under AS 09.60.010(c)(1)[7] or, alternatively, an award of no less than $46,595 under Rule 82(b)(2). The Borough opposed the motion and, along with the individual defendants in the 2010 Voter Litigation, cross-moved for attorney fees under Rule 82(b)(2).[8] The voters opposed the cross-motion on AS 09.60.010(c)(2) grounds.

The superior court rejected the voters' contentions that AS 09.60.010(c) applies in this case. The court awarded the individual defendants in the 2010 Voter Litigation attorney fees of $8,691 under Rule 82(b)(2). The court then, also under Rule 82(b)(2), awarded the voters 30% of their attorney fees incurred against the Borough after the action was converted from an administrative appeal to a trial de novo. The court reasoned that the case did not "assume[] the character of a civil action" until its conversion. The court awarded no fees for the administrative appeal portion of the proceedings.

The Borough appealed the superior court's residency determinations. The voters appealed the superior court's attorney fees orders. We consolidated the appeals.

## III. STANDARD OF REVIEW

"As a general rule, we approach issues independently of the superior court when that court acts as an intermediate court of appeal."[9] But when the superior court

---

[7]     The voters argued they were entitled to full reasonable fees under AS 09.60.010(c)(1) because the "cases were brought to establish, protect and enforce [the] fundamental constitutional right" to vote.

[8]     The Borough argued it was the prevailing party because the court did not expressly conclude that rejecting the voters' ballots violated any laws, as alleged in the complaints.

[9]     *City of Nome v. Catholic Bishop of N. Alaska*, 707 P.2d 870, 875 (Alaska 1985) (citing *Burgess Constr. Co. v. Smallwood*, 698 P.2d 1206 (Alaska 1985); *Jager*

(continued...)

conducts a trial de novo under Alaska Appellate Rule 609, we review only the superior court's findings and conclusions, not those of the agency.[10] We review the superior court's factual findings under the clearly erroneous standard.[11] "We will find clear error only if, after a thorough review of the record, we come to a definite and firm conviction that a mistake has been made."[12] "Legal questions are reviewed de novo, and we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[13]

We review the superior court's decision to grant or deny injunctive relief for abuse of discretion.[14] "[W]e review de novo whether the trial court applied the law correctly in awarding attorney's fees."[15]

---

[9]     (...continued)
*v. State*, 537 P.2d 1100, 1106 (Alaska 1975)).

[10]     *Nash v. Matanuska-Susitna Borough*, 239 P.3d 692, 698 (Alaska 2010) (citing *City of Nome*, 707 P.2d at 875).

[11]     *Id.* (citing *City of Nome*, 707 P.2d at 876).

[12]     *Soules v. Ramstack*, 95 P.3d 933, 936 (Alaska 2004) (citing *Rausch v. Devine*, 80 P.3d 733, 737 (Alaska 2003)).

[13]     *Id.* at 936-37 (citing *Carr-Gottstein Props., Ltd. P'ship v. Benedict*, 72 P.3d 308, 310 (Alaska 2003)).

[14]     *Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 177 P.3d 1181, 1184 (Alaska 2008) (citing *Betz v. Chena Hot Springs Grp.*, 657 P.2d 831, 837 (Alaska 1982)). "Under the abuse of discretion standard, 'an injunction will not be disturbed unless contrary to some rule of equity, or the result of improvident exercise of judicial discretion.' " *Alsworth v. Seybert*, 323 P.3d 47, 54 n.11 (Alaska 2014) (quoting *State v. Kluti Kaah Native Vill. of Copper Ctr.*, 831 P.2d 1270, 1272 n.4 (Alaska 1992)) (internal quotation marks omitted).

[15]     *Marron v. Stromstad*, 123 P.3d 992, 998 (Alaska 2005) (citing *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001)).

## IV.    DISCUSSION

### A.    The Superior Court Did Not Err In Determining That The Voters Were Borough Residents For The 2010 And 2011 Elections.

The Alaska Constitution, Alaska Statutes, and Borough Code require a person to have been a "resident" of the voting district in which the person seeks to vote for at least 30 days prior to the election to be eligible to vote in that election.[16] With one exception, discussed below, the Borough does not challenge the legal standards the superior court used to determine residency;[17] it challenges only the court's factual determinations that each voter intended to remain in the Borough as a permanent home. We therefore express no opinion on the propriety of the legal standards the superior court used and review only the superior court's factual findings for clear error.

The Borough argues that the superior court's determinations that each voter intended to maintain a home in the Borough were erroneous because (1) the court based its factual findings of residency intent on the voters' expressed intent without considering

---

[16]    Alaska Const. art. V, § 1; AS 15.05.010; AS 29.26.050(a); L&PBC 04.15.010. The Borough does not dispute that the voters meet the laws' other requirements.

[17]    The superior court found the rules for determining voter residency in AS 15.02.020. The court explained that as a threshold matter, the voter must have a fixed place of habitation where the voter wishes to vote. But "[t]he fundamental issue is what the voter's intent is" regarding the place to which the voter plans to return whenever absent. According to the superior court, a presumption of intent is established under AS 15.05.020(8), which provides, "The address of a voter as it appears on the official voter registration record is presumptive evidence of the person's voting residence." The court stated that the party challenging residence bears the burden of overcoming that presumption; the challenger must prove the voter does not intend to remain in the place the voter wishes to vote. The court also addressed situations in which a person has more than one house: "If the voter has sufficient indicia of habitation in more than one place, it is not the role of the courts to force the voter to vote in a location which is not the location the voter prefers."

objective evidence, and (2) the court failed to apply L&PBC 04.15.020 residency standards.

### 1. Subjective and objective evidence support the superior court's findings that the voters intended to remain in the Borough.

"[T]he burden of proving a vote should not be counted is on the challenger to that vote."[18] The Borough therefore bore the burden of establishing that the voters were not Borough residents when they voted. The superior court concluded not only that the Borough failed to meet that burden, but also that the voters presented substantial evidence they intended to reside indefinitely in the Borough. A voter's residency intent is a question of fact determined by the superior court after sifting and weighing evidence, and we review that determination for clear error.[19]

The Borough argues that the superior court's intent determinations were clearly erroneous because the court based its findings solely on the voters' individual statements and failed to consider objective evidence.[20] But the court expressly stated: "*Absent any indicia* of fraud or unreasonableness or implausibility, the court should accept the statements of the voter as to their intended residence *if supported by sufficient*

---

[18] *Edgmon v. State, Office of Lieutenant Governor, Div. of Elections*, 152 P.3d 1154, 1159 (Alaska 2007) (citing *Finkelstein v. Stout*, 774 P.2d 786, 788 (Alaska 1989)).

[19] *See Estate of Smith v. Spinelli*, 216 P.3d 524, 528 (Alaska 2009) (" 'Conclusions about the parties' intent drawn by the trial court after sifting and weighing . . . evidence [extrinsic to a deed] are conclusions of fact' that we review for clear error." (alterations in original) (quoting *Norken Corp. v. McGahan*, 823 P.2d 622, 626 (Alaska 1991))); *Maksym v. Bd. of Election Comm'rs of Chi.*, 950 N.E.2d 1051, 1065-66 (Ill. 2011) (reviewing election board's findings of candidate's residency intent for clear error).

[20] *Cf. Shumway v. Betty Black Living Trust*, 321 P.3d 372, 376 (Alaska 2014) (noting "[c]onduct is weighed more heavily than declarations of intent" in determining residency (citing *Kjarstad v. State*, 703 P.2d 1167, 1171 (Alaska 1985))).

*indicia* of residency." (Emphasis added.) The court weighed not only each voter's testimony as to intent, but substantial objective evidence as well. The court considered whether each voter's statement was supported by "sufficient indicia of residency," or contradicted by objective "indicia of fraud or unreasonableness or implausibility."[21] The Borough's argument that the court erred by basing its determination solely on the voters' subjective statements without considering objective evidence has no merit.

The Borough's argument could be construed as asserting that the superior court erred in weighing the evidence — that the court did not give enough weight to certain objective evidence offered to contradict the voters' stated intents. But in determining each voter's intent, the court necessarily evaluated crediblity, and its credibility findings are due particular deference.[22]

The evidence the Borough cites in support of its argument that the voters did not intend to remain in the Borough does not leave us with a firm and definite

---

[21] The superior court's approach to weighing the evidence comports with the approaches of courts in other jurisdictions. *See, e.g.*, *Gordon v. Blackburn*, 618 P.2d 668, 672 (Colo. 1980) ("[A]ll the circumstances must be considered before reaching a decision regarding a person's intention to establish a . . . home."); *Maksym*, 950 N.E.2d at 1060-61 ("[W]hile intent is gathered primarily from the acts of a person, a voter is competent to testify as to his intention, though such testimony is not necessarily conclusive." (citations and internal quotation marks omitted)); *People v. O'Hara*, 754 N.E.2d 155, 159 (N.Y. 2001) ("The determination of an individual's residence is dependent upon an individual's expressed intent and conduct.").

[22] "We give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence." *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)); *see also Gold Dust Mines, Inc. v. Little Squaw Gold Mining Co.*, 299 P.3d 148, 166 (Alaska 2012) ("Particular deference is due to the superior court's credibility determinations." (citing *Wasserman v. Bartholomew*, 38 P.3d 1162, 1167 (Alaska 2002))).

conviction that a mistake has been made. The Borough generally argues the fact that only work and vacation bring the voters to the Borough is evidence that they did not intend to reside in the Borough. But business ownership in a particular location does not disqualify a person from claiming that location as home.[23] And the acts of working and resting seem to constitute the entirety, or at least the majority, of "residing." It is unclear what other acts the Borough believes are necessary for residing in a location, but the record contains ample objective evidence supporting the court's findings regarding the voters' intents.[24]

### a. Robert Gillam

Robert Gillam testified that he plans to retire in the Borough and feels more at home and more involved in that community than in Anchorage. Objective evidence supports this intent: he has owned and spent a significant amount of time at his family house in the Borough since 1984 and shares close relationships with his neighbors. The Borough points to evidence weighing against the finding that his intent was genuine: he allegedly spends less than 60 days per year in the Borough, he claims a municipal residential real property exemption for his Anchorage residence, and he has not yet retired to the Borough. Although these facts could support a finding that he was an Anchorage resident, they do not necessarily establish that he was not a Borough resident

---

[23]     AS 15.05.020(2) states only that a place of business is not one's residence if the person actually resides elsewhere.

[24]     The superior court's factual findings discuss the voters' intents at the time of trial. But the proper inquiry under Alaska's voting laws is a voter's intent for the 30 days before an election. *See* Alaska Const. art. V, § 1; AS 15.05.010; AS 29.26.050(a); L&PBC 04.15.010. The Borough does not assert that the superior court erred in this regard, and the evidence appears to support findings that the voters intended to reside in the Borough for the 30 days before the relevant elections. Accordingly, we limit our consideration of this issue to simply noting it.

or did not intend the Borough to be his primary home. Sufficient evidence in the record supports the superior court's finding that Robert Gillam genuinely intended to reside in the Borough. That finding is not clearly erroneous.

### b. John Gillam

The Borough not only challenges the superior court's finding that John Gillam intended to reside in the Borough, it also argues that he never established physical presence in the Borough. But John Gillam's room in his family's house in the Borough, where he spent a substantial part of his childhood and continues to keep personal items, supports the court's finding that he had a physical presence in the Borough.[25]

John Gillam testified he considers his family's house in the Borough home and he intends to return there. He maintains personal effects there and has returned for brief periods when not living in Europe. There is no evidence that he intends to reside permanently in Switzerland or live anywhere other than the Borough upon return to the United States. His explanation for changing residency to the Borough is reasonable: knowing he would be living outside the United States for some time, he wanted to "formalize" his residency where he felt most at home — the Borough. Sufficient objective evidence supports John Gillam's stated intent. The court did not clearly err in finding that he intended to remain in the Borough and was a Borough resident.

### c. John Holman

Holman testified that he considers his house in the Borough to be his "only

---

[25] *See Fischer v. Stout*, 741 P.2d 217, 221 (Alaska 1987) ("[A fixed place of habitation] need not be a house or apartment. It need not have mail service. A residence need only be some specific locale within the district at which habitation can be specifically fixed. Thus, a hotel, shelter . . ., or even a park bench will be sufficient."); *Maksym*, 950 N.E.2d at 1065-66 (holding fact that candidate left personal property at prior residence supported his continuing residency at that place, notwithstanding his living in different city).

home." The fact that he changed his voter registration to the Borough in order to vote on the Save Our Salmon initiative raises a question regarding his stated intent, but it is not conclusive. The objective evidence supports his testimony as to his intent. His ties to the area go back to his youth and he is involved in the Borough's civic community. He has spent winters in different locations, but he returns to the same location in the Borough every summer. The Borough points to his Department of Motor Vehicles and liquor license registrations at his Wasilla address, and his prior voter registrations in Palmer and Wasilla as evidence that he does not intend to reside in the Borough. But the voter registrations speak only of his prior intent. And he testified that he used his Wasilla address on his liquor license registration because it was a more convenient place to receive mail. The court's finding that Holman genuinely intended the Borough to be his home is supported by the record and is not clearly erroneous.

### d. Daniel Oberlatz

Oberlatz testified that he considers himself a Borough resident, that the Borough is his "home," and that he would live in the Borough year-round if his wife were not working in Anchorage. His intent is supported by objective evidence: he registered to vote in the Borough in 1995 and has not registered elsewhere since that time, and he recently purchased a parcel in the Borough to build a larger family home. The Borough asserts he spends minimal time in the Borough (30 to 90 days per year) and is only there for work or recreation. But one may reside in the same place one works and recreates. The superior court's finding that Oberlatz genuinely intended to reside in the Borough is not clearly erroneous.

### e. Sonny Petersen

Petersen testified that he has more of an emotional and financial connection to the Borough than to Anchorage. Petersen has spent significant time in the Borough since he was a child, currently lives approximately six months a year in the Borough, and

registered to vote in the Borough around 1998. The Borough contends that his time in the Borough is only for "temporary work" and that his Department of Motor Vehicles registrations listing Anchorage as his address are stronger evidence of his true intent than his statements. Again, one may reside in the same locale in which one works, and vehicle registration is not dispositive of residency — the listed address often is chosen for convenience in Alaska, where receiving mail in rural locations can be difficult. The superior court did not clearly err in finding Petersen intended to reside in the Borough, especially considering his history and longstanding voter registration in the Borough.

**2. The superior court did not err by failing to apply the Borough's residency standards.**

The Borough argues that the superior court erred by failing to apply the Borough's residency standards set out in L&PBC 04.15.020.[26] The Borough contends

---

[26] L&PBC 04.15.020, adopted after the 2010 Borough election, provides:

A. To determine whether a person is a resident of the Borough, the Canvassing Committee may consider all evidence, including but not limited to:

(1) where the person spends most of his or her time;

(2) the location of people and things that are typically identified with one's "home," such as family members, pets, and vehicles;

(3) sincere statements or actions of the person as to where he or she intends to make a primary residence (where he or she manifests an intent to make a permanent home);

(4) where the person receives his or her mail;

(5) where the person and the person's spouse have registered to vote and howlong they have been

(continued...)

that AS 29.26.050(b)[27] gives municipalities the power to determine voters' residencies for municipal elections, that the Borough executed that power by enacting L&PBC 04.15.010 and .020, and that the superior court therefore erred by failing to apply the L&PBC 04.15.020 standards. But even if we were to accept the Borough's interpretation of AS 29.26.050(b), L&PBC 04.15.020 does not set standards for defining residency. L&PBC 04.15.020 merely explains that the Committee *may* consider various forms of evidence in determining whether a voter meets residency requirements. It does not state that the Committee *must* consider the enumerated forms of evidence, nor does it require a voter to provide any or all such evidence to support asserted Borough residency. More importantly, it does not modify or affect the definitions of resident

---

[26]    (...continued)
registered to vote there (and whether they have actually voted);

(6)    whether the person's daily life is connected to that address, including mail, bills, and bank accounts.

B.    The Canvassing Committee may also consider evidence that tends to show that the claim of residency is untrue, contradictory or inconsistent with other actions or inactions of the person.

[27]    AS 29.26.050(b) provides:

Voter registration by the municipality may not be required. However, in order to vote for a candidate or on a ballot measure relating to a specific local election district or service area, a municipality may by ordinance require that a person be registered to vote in state elections at least 30 days before the municipal election at an address within the boundaries of that local election district or service area. The municipality has the responsibility to determine if a voter meets the requirements of the ordinance and this section.

under AS 15.05.010, AS 29.26.050, or L&PBC 04.15.010.  And the court in fact did consider most of the factors listed in L&PBC 04.15.020; it simply did not cite the provision when doing so.  The Borough acknowledged this in its cross-motion for attorney fees, asserting the voters "prevailed on their appeal of the issue of their residency *under the Borough standards of residency*." (Emphasis added.)  The court did not err by failing to apply L&PBC 04.15.020 in determining the voters' residencies.

**B.      It Was An Abuse Of Discretion To Predetermine That The Voters Are Eligible Voters In Future Borough Elections.**

Paragraph 7 of the superior court's final judgment stipulates:

> Absent substantial change in circumstances pertaining to a specific individual, . . . Daniel Oberlatz, John Holman, John Clark Gillam, Robert B. Gillam and Raymond "Sonny" Petersen are and shall remain eligible to vote[] in the Lake and Peninsula Borough and the borough shall provide them with ballots and tally and count the votes they may cast.

This provision essentially directs the Borough to determine in future elections that the voters are eligible to vote in the Borough without regard to state or Borough voter eligibility laws.  Although it may be true that each voter will not cease being a Borough resident absent a substantial change in circumstances, "[t]he municipality has the responsibility to determine if a voter meets" the statutory requirements to vote in a municipal election.[28]  The Borough remains bound to apply Alaska's voter eligibility laws correctly in future elections and there is no indication it will do otherwise following this decision.  Enjoining the Borough from exercising its responsibility in the future was inappropriate and unnecessary, and we thus vacate paragraph 7.[29]  We expect the

---

[28]      AS 29.26.050(b).

[29]      *See Willkie v. Del. Cnty. Bd. of Elections*, 865 N.Y.S.2d 739, 743 (N.Y. App. 2008) (holding injunction requiring elections board to apply proper residency
(continued...)

Borough will apply the voter eligibility laws properly and will be mindful that the voters qualified as Borough residents in 2010 and 2011 when evaluating their future voting eligibilities.

### C. The Attorney Fees Awards Must Be Vacated Because The Voters Brought Constitutional Claims Under AS 09.60.010(c).

Alaska Statute 09.60.010(c) directs a court to award full reasonable attorney fees and costs to a plaintiff who has prevailed in asserting a constitutional right, and prohibits a court from ordering a losing plaintiff to pay the attorney fees of an opponent devoted to claims concerning constitutional rights. The superior court awarded partial attorney fees under Civil Rule 82 to the voters and the individual defendants. The voters appeal the awards, arguing they should have been awarded full fees against the Borough under AS 09.60.010(c)(1) and excused from paying the individual defendants' fees under AS 09.60.010(c)(2). We separately address the applications of AS 09.60.010(c) to the attorney fees claims involving the Borough and the individual defendants.[30]

#### 1. The voters brought constitutional claims against the Borough and may be entitled to full reasonable attorney fees under AS 09.60.010(c)(1).

The superior court concluded that this case does not "concern[] 'the establishment, protection, or enforcement' of a constitutional right." It explained that

---

[29] (...continued) standard in future was "unnecessary and inappropriate" where board was "already obligated to follow the law and there [was] nothing in the record to suggest that it [would] not do so").

[30] *Myers v. Snow White Cleaners & Linen Supply, Inc.*, 770 P.2d 750, 753 (Alaska 1989) ("Each request for fees or costs to a prevailing party in a multiparty lawsuit should be considered objectively on its own merits."); *see also* AS 09.60.010(c)(2), (d)(1) (directing court to consider whether constitutional claimant status applies for each individual claim).

because "the Constitution confers [voter registration residency requirements] to statute, this cannot be said to be a constitutional case. This lawsuit boils down to findings of fact and conclusions of statutory law." And "[t]he basic right . . . to vote was never in question."

It was error to determine the applicability of AS 09.60.010(c) based on the source of the rule of law controlling the case's outcome. Alaska Statute 09.60.010(c)'s application depends not on the source of the rule of law, but on the source of the right asserted.[31] It applies "[i]n a civil action or appeal *concerning* the establishment, *protection*, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska."[32] Conversely, AS 09.60.010(c) does not apply when the right finds its source in statute. In *Alliance of Concerned Taxpayers, Inc. v. Kenai Peninsula Borough*, for example, we reaffirmed that the right to legislate by municipal initiative derived from AS 29.26.100, not the Alaska Constitution.[33] We therefore held that the plaintiff asserting that right "did not raise issues concerning the establishment, protection, or enforcement of a right under the Alaska Constitution," so the plaintiff was not entitled to protection from an attorney fees award under AS 09.60.010(c)(2).[34]

But unlike the municipal initiative power in *Alliance of Concerned Taxpayers*, the right to vote derives from the Alaska Constitution, not from any statute.

_____

[31]     *See Alliance of Concerned Taxpayers, Inc. v. Kenai Peninsula Borough*, 273 P.3d 1128, 1139 (Alaska 2012) (looking to source of right asserted to determine whether case concerned constitutional right).

[32]     AS 09.60.010(c) (emphasis added).

[33]     273 P.3d at 1139 (citing *Carmony v. McKechnie*, 217 P.3d 818, 823-24 (Alaska 2009); *Griswold v. City of Homer*, 186 P.3d 558, 563 (Alaska 2008)).

[34]     *Id.*

Article V, section 1 of the Alaska Constitution grants the right to "vote in any state or local election" to every citizen of the United States over the age of 18 "who meets registration residency requirements . . . prescribed by law." Anyone meeting those requirements has a constitutional right to vote. Statutory voter registration requirements do not create that right, they only limit it; the Alaska Constitution creates the right.[35]

The voters have constitutional rights to vote in municipal elections under article V, section 1 of the Alaska Constitution. They sought to protect those rights by asserting that the Borough's application of residency laws deprived them of their opportunities to vote. It does not matter that the deprivations also violated statutes designed to regulate the right to vote or that the statutes provide the rule of law for determining whether the constitutional right has been infringed. The ultimate question is whether the voters sought to protect themselves from deprivation of their constitutional rights by the Borough's application of the election laws.

The voters' actions clearly "concern the . . . protection . . . of a right under . . . the Constitution of the State of Alaska," so the voters satisfy the constitutional claim requirement of AS 09.60.010(c). The voters prevailed against the Borough by having their voting rights restored. We therefore reverse the superior court's determination that the voters did not bring constitutional claims and hold that the voters may be entitled to

---

[35] *See Park v. State*, 528 P.2d 785, 786-87 (Alaska 1974) (looking to whether constitutional right to vote was violated through denial of alien's voter registration on statutory grounds).

Defining a right's source is not always an easy matter. Countless statutes have been enacted to execute the Alaska Constitution's provisions and to protect constitutional rights. It can be difficult to decipher whether a violation of such a statute deprived the person of a constitutional right or a statutory right. But the right's source in this case is straightforward: article V, section 1 of the Alaska Constitution clearly grants the right to vote in any municipal election for which one is qualified.

full reasonable attorney fees and costs against the Borough as constitutional claimants under AS 09.60.010(c)(1).[36] If the voters are entitled to full reasonable attorney fees and costs, the award should include the fees and costs incurred for their constitutional claims over the entirety of the 2010 and 2011 Voter Litigation actions, not only those incurred after conversion to a trial de novo.[37] We vacate the attorney fees award and remand for determination of a new award to the voters consistent with this opinion.[38]

### 2. The voters may be partially immune from paying attorney fees to the individual defendants under AS 09.60.010(c)(2).

When a suit involves a mix of constitutional and non-constitutional claims, AS 09.60.010(c)(2) only protects a claimant from paying its opponent's attorney fees "devoted to claims concerning constitutional rights." The voters filed both constitutional and non-constitutional claims against the individual defendants. The parties urge us to

---

[36]     AS 09.60.010(d)(2) bars a court from making an award under AS 09.60.010(c)(1) if the claimant had "sufficient economic incentive to bring the suit, regardless of the constitutional claims involved." It appears that the voters' primary purpose in bringing the actions against the Borough was to reinstate their resident voter statuses, not to obtain an economic benefit, but this issue is not before us. The Borough may raise the issue on remand.

        AS 09.60.010(e) also gives courts discretion to abate fee awards under AS 09.60.010(c)(1) if "the full imposition of the award would inflict a substantial and undue hardship . . . upon the taxpaying constituents of [a] public entity." We decline the voters' invitation to conclude from the record that the imposition of full fees will not impose an undue hardship on the Borough or its taxpayers. The Borough may raise the hardship defense on remand.

[37]     *See* AS 09.60.010(c) (stating provision applies "[i]n a civil action *or appeal*") (emphasis added).

[38]     We note that the voters are not entitled to an attorney fees award for work done solely on claims against the Borough that did not concern the voters' constitutional rights to vote. *See* AS 09.60.010(c)(1).

consider the primary nature of the claims as a whole:  the Borough, on behalf of the individual defendants, asserts the claims were primarily personal in nature and based on non-constitutional conflict of interest laws, while the voters contend the "main issue" in the cases against the individual defendants involved protecting the voters' constitutional rights to vote.  But AS 09.60.010(c)(2) applies to *claims* concerning constitutional rights. The court cannot simply characterize all the claims as primarily constitutional or primarily non-constitutional.  Determining whether the voters are immune from paying attorney fees to the individual defendants requires consideration of the nature of each claim against those defendants.

For example, AS 09.60.010(c)(2) could apply to the voters' claims against the individual defendants to the extent those claims concern protection of their voting rights, but not to claims alleging borough code or common law conflict of interest violations.  But we emphasize that Rule 82 attorney fees may be awarded only for work that would not have been necessary but for a non-constitutional claim; AS 09.60.010(c)(2) applies to work in which a constitutional claim is implicated in any way.[39]  We therefore vacate the attorney fees awards to the individual defendants and remand for the superior court to base any Rule 82 awards to them only on those fees devoted solely to defending non-constitutional claims.[40]

---

[39]     *Cf. Fox v. Vice*, 131 S. Ct. 2205, 2215 (2011) (holding defendant may "receive only the portion of his fees [under 42 U.S.C. § 1988] that he would not have paid but for the frivolous claim").  And we note that any attorney fees awarded under Rule 82 "cannot be based on fees incurred defending against the § 1983 claim." *Brown v. Ely*, 14 P.3d 257, 264 (Alaska 2000) (citing *Lyman v. State*, 824 P.2d 703, 707 (Alaska 1992)).

[40]     The Borough argues that AS 09.60.010(c)(2) does not apply to the claims against the individual defendants because the claims were frivolous and because the voters had a sufficient economic incentive to bring their constitutional claims.  Again,

(continued...)

## V. CONCLUSION

We AFFIRM the superior court's decisions that Daniel Oberlatz and Robert Gillam were Borough residents and legally qualified to vote in the 2010 Borough election and that Daniel Oberlatz, John Holman, Robert Gillam, John Gillam, and Raymond "Sonny" Petersen were Borough residents and legally qualified to vote in the 2011 Borough election. We VACATE paragraph 7 of the order predetermining that the voters are eligible to vote in future Borough elections. And we VACATE the attorney fees awards and remand for reconsideration consistent with this opinion.

---

[40]     (...continued)
we do not decide whether the voters actually qualify for protection under AS 09.60.010(c)(2), leaving it to the superior court to first consider any issues of frivolity or economic incentive.